UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD E.,<br><br>                     Plaintiff,<br><br>           v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                     Defendant. | CASE NO. C18-5607-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff appeals the denial of his application for Disability Insurance. On February 8, 2017, the ALJ issued a decision finding obesity, Wegner's granulomatosis (GPA), scleritis, status-post aneurysm, left shoulder tendonitis, and degenerative joint disease are severe impairments; Plaintiff has the RFC to perform light work limited to not standing or walking more than two hours per workday, with additional postural and environmental limitations. With this RFC, the ALJ found Plaintiff cannot perform past relevant work as a training instructor or manager of a self-service station, but had acquired skills from that work that were transferable to other occupations he could perform in the national economy. Tr. 147-48.

Plaintiff sought review of the ALJ's decision by the Appeals Council (AC). The AC granted Plaintiff's request for review, and issued a written decision on June 13, 2018, finding Plaintiff not disabled. Tr. 4-6. The AC's decision is therefore the final decision of the

REPORT AND RECOMMENDATION - 1

1  Commissioner. 20 C.F.R. §§ 404.955, 404.981. *Accord Brewes v. Comm'r of SSA*, 682 F.3d
2  1157, 1162 (9th Cir. 2012). The AC found the opinions of Plaintiff's treating physician assistant
3  Mike Meyers, PA, was entitled to less weight than that of testifying medical expert Kweli
4  Amusa, M.D., and provided reasons for its determination; the AC otherwise adopted the ALJ's
5  findings, and the ALJ's conclusion that Plaintiff was not disabled during the period from June
6  30, 2011 (the alleged onset date) to December 31, 2013 (the date last insured (DLI)). Tr. 4-5.

7  Plaintiff contends the AC erred in (1) rejecting the limitations identified by Mr. Meyers;
8  (2) improperly assessing Plaintiff's testimony regarding his symptoms and limitations; (3) failing
9  to find Plaintiff's fibromyalgia, diabetes, arthritis in his hands and edema in his lower extremities
10 were severe impairments at step two; and (4) failing to include limitations in the RFC
11 attributable to Plaintiff's severe impairments to his vision and his stamina, fatigue and weakness,
12 and to Plaintiff's other impairments of hand arthritis, diabetes and lower extremity edema.

13 For the reasons below, the Court recommends the Commissioner's final decision be
14 **AFFIRMED** and the case be **DISMISSED** with prejudice.

15 **DISCUSSION**

16 The Court will reverse the Commissioner's final decision only if it is not supported by
17 substantial evidence in the record as a whole or if the wrong legal standard was applied. *Molina*
18 *v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The Court will not reverse the final decision on
19 account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than
20 one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v.*
21 *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In addition, Plaintiff's disability insurance expired
22 on December 31, 2013, the date last insured (DLI). Tr. 325. Because Plaintiff seeks disability
23

insurance benefits he must therefore establish he was disabled on or before the DLI. 20 C.F.R. § 404.1509.

**A.      Medical Evidence:  Treatment of opinions of Mike Meyers, PA**

Plaintiff argues the AC erroneously rejected the opinion of Michael Meyers, a physician assistant who acted as Plaintiff's primary care practitioner. Dkt. 12 at 1. Mr. Meyers is not a doctor and thus is not an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a). [1] However, the AC must give germane reasons to reject Mr. Meyer's opinions. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The AC may also evaluate other medical source opinions using the same factors applied to evaluate medical opinions of acceptable medical sources. SSR 06-03p; *see also* 20 C.F.R. § 404.1527(d).

Mr. Meyers completed a medical source statement form on November 3, 2016, nearly three years after the DLI. Tr. 907-909. Although the opinion purports to state limitations existing since September, 2011, it includes at least one condition—Plaintiff's diabetes—that was not diagnosed until after the DLI. Tr. 907, 628. Mr. Meyers opined Plaintiff could sit no longer than 30 minutes at a time, stand no longer than five minutes, walk no farther than 100 yards, and could not work more than two hours per day. Tr. 908-9. In the portion of the statement requesting explanations, Mr. Meyers stated "combination of morbid obesity, arthralgias and myalgias related to [Plaintiff's] connective tissue disease limit his daily physical activity severely." Tr. 908.

---

[1] New regulations, applicable to claims filed after March 27, 2017, include physician assistants, advanced practice registered nurses, and audiologists as "acceptable medical sources," and recognize other licensed heath care workers as "medical sources" and other sources of evidence as "nonmedical sources." 20 C.F.R. § 416.902(a), (d), (e). However, the revised regulations do not apply to this case, which was filed on February 13, 2015. Tr. 296.

REPORT AND RECOMMENDATION - 3

The ALJ did not address Mr. Meyers' statement; however, after granting review, the AC assessed the Mr. Meyer's statement and assigned it little weight, because (1) the limitations on sitting, standing, and working are inconsistent with opinion evidence and treatment records; (2) the opinion contains insufficient rationale of evidence relied upon to support the restrictive findings and is inconsistent with evidence reflecting only mild pitting edema in the lower extremities; and (3) Mr. Meyers' limitations regarding Plaintiff's ability to reach, finger, engage in fine manipulation, bend and stoop lack specific quantitative function-by-function assessment of Plaintiff's work-related abilities.  Tr. 5.

Plaintiff contends the AC erred by (1) failing to identify specific evidence that is inconsistent with Mr. Meyers' opinions; (2) "cherry-picking" evidence that Plaintiff's pitting edema was only mild; and (3) failing to develop the record further in light of the AC's findings of insufficient rationale and the lack of function-by-function limitations.  Dkt. 12 at 3-10. The Court finds otherwise and concludes the AC provided germane reasons, supported by substantial evidence, for its treatment of Mr. Meyers' opinion.

### 1. *Inconsistency with Medical Evidence*

Contrary to Plaintiff's contention, the Appeals Council, through its adoption of the ALJ's opinion, identified specific evidence that was inconsistent with Mr. Meyers' opinion.  In specific, the AC stated it "adopts the findings and conclusions of the Administrative Law Judge as contained in the decision dated February 8, 2017." Tr. 5. The ALJ found Plaintiff's treatment records established that many of his impairments—including his aneurysm, GPA, scleritis and shoulder issues—had resolved with treatment by the DLI; furthermore, other conditions— including Plaintiff's hand arthritis and edema—were described at that time as merely "mild."  Tr.

143-147.[2] The record establishes Plaintiff's aneurysm was "resolved" by August, 2011. Tr. 440. Plaintiff's GPA was described by his treating doctors at Harborview Medical Center's Rheumatology clinic as "not active" on October, 2012; the same note indicates "no clinical evidence of scleritis flares over the past 3 months." Tr. 404. This trend continued: notes from Plaintiff's June 19, 2013, Harborview follow-up show Plaintiff no longer had a cough, and had off and on dry eyes but no episodes suggesting recent scleritis attacks. Tr. 978. The notes also state Plaintiff's shoulder was without pain after having been treated with an injection three months previously, and that hand x-rays showed only "mild" osteoarthritic changes with no erosive disease. Tr. 978. Plaintiff's GPA is described as "still uncontrolled," but medical treatment was planned to "induc[e] remission." Tr. 977-78. Plaintiff's June, 2013 follow-up visit with Harborview's Ophthalmology Department likewise yielded a finding that his symptoms and exam "continue to be stable." Tr. 472. Plaintiff described his GPA as "relatively controlled"; he reported occasional dry eye, which the doctor did not believe to be "associated with inflammatory disease," and which Plaintiff reported was "better" with prescribed gel treatment. Tr. 470, 472. Similarly, in September, 2013, Plaintiff's symptoms "continue[d] to be stable," with "no ocular manifestations of [GPA] today," and "[n]o ocular inflammation"; occasional dry eye was relieved by ointment that Plaintiff used "only once in a great while." Tr. 464, 466.

---

[2] That this evidence is discussed elsewhere in the ALJ's opinion and not in the portion of the AC's opinion addressing Mr. Meyer's statement is immaterial; the AC adopted the ALJ's opinion, and the Court reads the decision as a whole. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality" to require repetition of the same factual analysis relevant to multiple portions of the ALJ's decision.)

REPORT AND RECOMMENDATION - 5

1  Records from after the DLI confirm Plaintiff's aneurysm, GPA and scleritis had resolved
2  with treatment.  Harborview Neurosurgery reported in April, 2015, that Plaintiff's "treated
3  aneurysm remains obliterated."  Tr. 647.  By March, 2014, Plaintiff's GPA was described as
4  "[i]n remission clinically."  Tr. 399.  In March, 2015, Plaintiff's scleritis was "well controlled"
5  with "no evidence of recurrent scleritis"; Plaintiff's pulmonary condition was stable, and his
6  vasculitis symptoms were stable such that it was appropriate to begin decreasing his medications.
7  Tr. 661.
8  In short, the medical record demonstrates Plaintiff's medical conditions as of December
9  31, 2013, the date last insured, were not consistent with the extreme limitations contained in Mr.
10 Meyers statement three years later.  In addition, the opinions of medical expert Dr. Amusa and of
11 the State Agency doctor, Gordon Hale, M.D., further contradict Mr. Meyers' limitations.  Tr.
12 160-164; 213-15.  As the AC and ALJ found, those opinions are consistent with Plaintiff's
13 treatment records and further support the AC's rejection of Mr. Meyers' opinions.  Tr. 4-5, 147.
14 These are germane reasons to reject an opinion from an other medical source.  An ALJ may
15 properly reject an opinion that is inconsistent with the record.  *See generally Meanel v. Apfel*,
16 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986);
17 *see also Thomas*, 278 F.3d at 957 (ALJ may consider improvement with treatment in discounting
18 physician's opinion).
19  *2.    Pitting Edema*
20  Plaintiff's claim the AC improperly cherry-picked the evidence regarding his edema
21 symptoms fails.  The condition is only briefly mentioned in Plaintiff's pre-DLI treatment notes.
22 It first appears in an October, 2011 note, described as "trace."  Tr. 412.  Notes from May, 2012,
23 observe "1+ pitting edema" in both extremities, but describe no additional symptoms.  Tr. 425.

REPORT AND RECOMMENDATION - 6

Finally, as of November, 2014 (approximately one year after the DLI), there is a note of "mild pitting edema in the lower extremity." Tr. 633. As the ALJ found, there is no medical recommendation that Plaintiff elevate his legs for most of the day (as Plaintiff claims is necessary) to address this condition. Tr. 146.

Plaintiff cites to a September, 2016 record describing his edema as "chronic." Dkt. 12 at 9, citing Tr. 904-5. But this note is nearly three years after the DLI. In addition, it follows a post-DLI diagnosis of Plaintiff with Type 2 Diabetes, and a related diagnosis of peripheral neuropathy. Tr. 628, 800. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) ("any deterioration in [claimant's] condition subsequent to [the period of eligibility] is, of course, irrelevant[.]" (internal quotations omitted).[3] It cannot be said that the AC's finding of mild edema as of the DLI was not supported by substantial evidence.

### 3. Duty to Develop the Record

Finally, the AC rejected Mr. Meyers' opinions on the ground he provided an insufficient rationale and because the opinion lacked quantitative function-by-function assessments. These are additional germane reasons to reject a medical opinion. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. *See also Meanel*, 172 F.3d at 1114 (ALJ may reject opinion lacking specific limits).

Plaintiff argues these infirmities trigger a duty to develop the record. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the

---

[3] On Reply, Plaintiff also cites to a June 9, 2013 record showing an infected blister on Plaintiff's left toe. Dkt. 17 at 3, citing Tr. 387. Additional records show that this had fully healed ten days later, and there is no indication that this condition was connected to Plaintiff's ongoing impairments. Tr. 976.

REPORT AND RECOMMENDATION - 7

record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, there was no ambiguity, and the record, including the treatment notes and the opinions of Drs. Amusa and Hale, was adequate for the ALJ to determine whether Plaintiff was disabled. Tr. 147. There was no duty to develop the record further. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (no duty to re-contact doctors where the ALJ found the record adequate to make a determination as to disability).

For the foregoing reasons, the Court recommends affirming the AC's treatment of Mr. Meyer's opinions.

**B.     Assessment of Plaintiff's Symptom Testimony**

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[4] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The AC adopted the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not supported. Contrary to Plaintiff's

---

[4] While the Social Security Administration eliminated the term "credibility" from its sub-regulatory policy addressing symptom evaluation, *see* SSR 16-3p, case law containing that term remains relevant.

contention, the ALJ provided several specific, clear, and convincing reasons in support of that conclusion.

### 1. *Medical Evidence*

The ALJ discounted Plaintiff's testimony regarding the extent of his symptoms, in part, because it was not consistent with the medical evidence. As discussed above, Plaintiff's aneurysm, GPA, scleritis and shoulder tendinitis had substantially resolved with treatment by the DLI, and his hand arthritis and leg edema were described in his treatment records as "mild." Tr. 440, 404, 978, 464, 647, 399, 412, 633. Plaintiff was diagnosed with fibromyalgia in October, 2012 based upon a tender point screen, but he never received treatment for it. Tr. 403, 405, 167-68. In addition, Plaintiff reported to his treating providers at Harborview that he was "doing well," "feels great," could walk half a mile, and did yard work with his hands. *See, e.g.* Tr. 403, 512, 424, 661. The ALJ (whose findings were adopted by the AC) found that this evidence was inconsistent with Plaintiff's testimony that he can sit for only an hour and stand for only a matter of minutes. Tr. 143.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id*.; 20 C.F.R. § 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record.

REPORT AND RECOMMENDATION - 9

1 *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter,* 242 F.3d
2 1144, 1148 (9th Cir. 2001).

The ALJ here rationally construed the record to support the existence of limitations in Plaintiff's functioning, but inconsistent with the degree of impairment alleged by Plaintiff. The ALJ provided specific, clear and convincing reasons for declining to accept Plaintiff's testimony as to the degree of his impairment.

### 2. *Activities*

The ALJ also found Plaintiff's activities contradict his claims of disabling symptoms. The record contains references to several activities that are inconsistent with Plaintiff's professed limitations. Plaintiff cares for his elderly mother, cooking, driving her to appointments, and doing laundry. Tr. 179, 315. He also does house and yard work, including vacuuming, cleaning, weeding, mowing and minor home repairs, although he noted in his 2015 Function Report that he tires after two hours. Tr. 315. Plaintiff also grocery shops, and shops on-line using a computer. Tr. 316. All of these activities conflict with Plaintiff's assertions that he cannot stand more than a few minutes, cannot walk more than 150 yards and cannot sit more than an hour. Tr. 172-174.

Plaintiff argues because none of these activities was sufficiently sustained to be transferrable to a work setting, they are not appropriate reasons for disregarding his testimony. Dkt. 12 at 14. However, activities undermine a claimant's allegations where they either (1) contradict the claimant's testimony, or (2) "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner v.*

REPORT AND RECOMMENDATION - 10

*Commissioner of Social Security*, 613 F.3d 1217, 1225 (9th Cir. 2010); *Valentine v. Commissioner of Social Security*, 574 F.3d 685, 693 (9th Cir. 2009).

The ALJ properly considered evidence of plaintiff's activities as contradicting his testimony as to the degree of his physical and mental impairments. *Orn*, 495 F.3d at 639. For this reason, and for the reasons discussed above, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's symptom testimony.[5]

**C.   Step Two**

Plaintiff contends the ALJ (as adopted by the AC) erred in failing to find at step two that Plaintiff's diabetes, fibromyalgia, hand arthritis and lower extremity edema were severe impairments. At step two, plaintiff bears the burden of establishing he has a medically determinable severe impairment or combination of impairments, and that the impairment is severe, i.e. more than minimally affects his functioning. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Even if an ALJ erroneously finds an impairment to be non-severe, the error is harmless if the ALJ properly considers the limitations caused by the impairment at the later steps. *Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007).

As a threshold matter, although Plaintiff includes diabetes in his argument, he makes no substantive argument regarding this condition. The record is clear Plaintiff was not diagnosed with

---

[5] Plaintiff takes issue with the ALJ's observation that Plaintiff's testimony at hearing primarily addressed his current limitations and was not helpful in assessing his limitations prior to the DLI, arguing that the ALJ should have sought clarification during his questioning of Plaintiff. Dkt. 12 at 15; Tr. 146. As the Commissioner observed, the ALJ's statement appears simply to point out that Plaintiff's pre-DLI statements to his treatment providers (including reporting improvement) and his 2015 Function Report are a more reliable sources of his actual condition prior to the DLI than his years-later testimony about his current symptoms. Dkt. 13 at 8. But even if this were deemed an erroneous rationale, it is harmless because, as discussed above, the ALJ provided additional clear and convincing reasons for disregarding Plaintiff's symptom testimony. *Carmickle,* 533 F.3d at 1162-63.

REPORT AND RECOMMENDATION - 11

1  diabetes until 2015, which is nearly two years after the DLI.  Tr. 628.  There was therefore no error

2  in excluding diabetes as a severe impairments, or from the RFC determination.

3        The ALJ found Plaintiff's degenerative joint disease was a severe impairment.  Tr.  141.

4  The Court has found no reference in the record to degenerative joint disease except for a finding of

5  mild osteoarthritis in Plaintiff's hands; thus, contrary to Plaintiff's contention, the ALJ found

6  Plaintiff's osteoarthritis of the hands to be a severe impairment.  Tr. 399.

7        The ALJ also noted Plaintiff's fibromyalgia diagnosis during his step two discussion, but

8  found Plaintiff was not being actively treated for it, thus indicating it was not causing more than

9  minimal limitations.  Tr. 141.  Importantly, the ALJ added "effects of pain from the possibility of

10 this condition, along with other conditions, are considered in determining the residual functional

11 capacity."  *Id*.  Finally, the ALJ found medical evidence established Plaintiff's edema was

12 occasional and not significant.  Tr. 145, 146.  For these reasons the ALJ did not commit harmful

13 error at tep two.

14 **D.     RFC**

15       An RFC is the "maximum degree to which [a claimant] retains the capacity for sustained

16 performance of the physical-mental requirements of jobs."  20 C.F.R. 404, Subpt. P, App. 2 §

17 200(c).  It is an administrative decision as to the most a claimant can do, despite his limitations.

18 SSR 96-8p.  The ALJ must assess all of the relevant evidence, including evidence regarding

19 symptoms that are not severe, to determine if the claimant retains the ability to work on a

20 "regular and continuing basis," i.e., eight hours a day, five days a week.  *Reddick v. Chater*, 157

21 F.3d 715, 724 (9th Cir. 1988); *Lester*, 81 F.3d at 833; SSR 96-8p.

22       The ALJ expressly noted he took Plaintiff's fibromyalgia pain into consideration in

23 formulating the RFC, which contains limitations on lifting, a limit of two hours of standing or

REPORT AND RECOMMENDATION - 12

walking, and postural and environmental limitations. Tr. 141-142. Limitation to a non-dusty environment was included to avoid complications with Plaintiff's eyes.[6] Tr. 142, 163. The ALJ also considered Plaintiff's fatigue in finding Plaintiff unable to persist in his prior work, and in imposing the two hour walking/standing limitation—which was consistent with Plaintiff's statement in his 2015 Function Report that he tired after two hours of yard work. Tr. 146, citing Tr. 316. These restrictions are consistent with the opinion of Dr. Amusa. Tr. 162-163.

Plaintiff argues the RFC determination should also have included additional limitations expressed in Mr. Meyers' statement and Plaintiff's testimony—namely limitations on fingering and addressing Plaintiff's alleged need to elevate his legs most of the day. However, as discussed above, the AC did not err in rejecting that evidence, and there is therefore no error in failing to account for it in the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The AC did not err in adopting the ALJ's RFC. The ALJ is responsible for resolving conflicts in the medical record, *Carmickle*, 533 F.3d at 1164, and when evidence reasonably supports either confirming or reversing the Commissioner's decision, the court may not substitute its judgment for that of the administrative decision-maker. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court accordingly recommends affirming the AC's RFC determination.

---

[6] The ALJ found, based upon the treatment record and Dr. Amusa's testimony, that Plaintiff's scleritis had resolved with treatment. Tr. 146-47, 161. As the ALJ found, there is no evidence in the record of continued scleritis "attacks" as of the DLI. Tr. 146. While post-DLI treatment notes do reflect an increase in episodes of eye pain, the records consistently indicate that the cause is not believed to be scleritis, but instead corneal irritation secondary to dry eye. *See*, *e.g.* Tr. 661, 1000. A worsening of Plaintiff's eye symptoms after the DLI is not relevant. *Weetman*, 877 F.2d at 22.

REPORT AND RECOMMENDATION - 13

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision should be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **February 19, 2019.** If no objections are filed, the Clerk shall note the matter for February 22, 2019 as ready for the Court's consideration. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal

DATED this 5th day of February, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 14